IN THE UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| IN THE MATTER OF: | * | NO. 10-13554 |
| --- | --- | --- |
| | * | c/w 10-AP-01131 |
| STOLTZ, BRIAN H. | * | |
| STOLTZ, DEBRA S. | * | SECTION "A" |
| | * | |
| *Debtors* | * | CHAPTER 7 |

*******************************************

## FIRST AMENDING and SUPPLEMENTAL COUNTERCLAIM

**NOW INTO COURT,** through undersigned counsel, comes Debtor and Adversarial Proceeding Defendant, Brian H. Stoltz ("Stoltz" or "Debtor"), who hereby amends and supplements the original Counterclaim[1], as follows:

*1.* All paragraphs 1-198, averments, allegations and other representations contained in the original Counterclaim are incorporated, reaverred and realleged herein, *in extenso* and *in globo.*

2. Paragraph 2 of the Counterclaim is amended and supplemented to add defendant-in-counterclaim, David Herlihy, Esquire ("Herlihy"), a person above the age of majority, who, on information and belief, is domiciled and resides within the Eastern District of Massachusetts.

3. The "Facts" section of the Counterclaim, ¶¶ 4-91, is supplemented to aver and allege that:

    A.    At all times relevant to the allegations and averments contained in the original Counterclaim, Herlihy was legal counsel for original co-defendant-in-

---

[1] The COUNTERCLAIM was originally filed in the United States District Court for the Eastern District of Massachusetts, bearing Docket Number 09-12208-NMG ("Massachusetts Proceeding"). The Massachusetts Proceeding was then removed to this Honorable Court in conjunction with a currently-pending Title 11 proceeding (seeking Chapter 7 relief), bearing Bankruptcy Action Number 10-13553 "A" and has been assigned Adversary Proceeding Numbers 10-AP-01130 (Porter) and 10-AP-01131 (Stoltz) therein.

1

counterclaim, Highsteppin' Productions, LLC ("HSP"), and advised same, as well as advised HSP's sole owner, co-defendant-in-counterclaim, Philip Stepanian ("Stepanian");

B. At all times relevant to the allegations and averments contained in the original Counterclaim, Herlihy had direct involvement with, and was an integral part of, any and all decisions made by HSP regarding Stoltz, his band members George Porter, Jr. ("Porter") and David Russell Batiste ("Batiste"), and their musical group, Porter-Batiste-Stoltz, LLC ("PBS") (collectively and/or individually "Artists").

C. Despite his clear allegiance and loyalty to HSP, Herlihy allowed HSP to hold him out as "your" lawyer to Porter, Stoltz, Batiste and PBS, in a direct conflict of interest that was not timely and fully disclosed and for which no waiver of conflict was ever sought, discussed, negotiated nor obtained with/from the Artists.

D. Herlihy misrepresented himself to the members of PBS when held out to them by HSP as "your" lawyer by failing to disclose, and thus hiding, the fact that he had a professional relationship with Stepanian prior to, during and after HSP's formation.

E. Herlihy misrepresented himself to the members of PBS when held out to them by HSP as "your" lawyer by failing to disclose, and thus hiding, the fact that he actively represented HSP in the drafting and negotiations of the *Personal Management Agreement* ("Agreement") at issue in this litigation, as well as a Merchandising Agreement which was never accepted nor executed by the

Artists. Moreover, the Agreement is both seriously flawed and fails to reflect the expectations, mutual rights, duties and conduct of the individuals and entities involved, because the Agreement was insufficient to address all the facets of HSP, Stepanian and Herlihy's involvement with the Artists and was not a proper, stand-alone document. Rather, HSP, Stepanian and Herlihy should have used a series of Recording agreements, Merchandise agreements, Copyright registrations, Publishing agreements, Live event contracts, Production agreements and Licensing agreements to document, regulate and accurately describe and govern the business and legal relationships relative to each component of actual business that should not have transpired in the absence of clearly written agreements.

F.   It was unbeknownst to PBS that Herlihy had previously represented HSP in the aforementioned (and other yet to be discovered and/or proven) prior capacities, when, in 2008, Stepanian and HSP held Herlihy out as "your" lawyer to Porter, Stoltz, Batiste and PBS, and presented Herlihy in a manner that made him seem like a new-comer. At no time did Herlihy ever disclose the existence and details of his conflict(s) of interest, let alone seek, discuss, negotiate nor obtain a clear and written waiver of conflict with/from the Artists. Herlihy had every opportunity to bring a comprehensive waiver agreement or series of waiver agreements to the table to address and govern the actual business conduct between Artists and defendants, including legal descriptions, disclosures, discussions and consideration by Artists and their

independent legal counsel, to arrive at an equitable and ethical deal between the parties but failed to do so.

G. Herlihy unequivocally misrepresented himself to Porter, in a September 9, 2008 email which feigned to dress Herlihy in the guise of a newcomer to HSP, stating: *"Dear George, you don't know me well, as I just joined the Highsteppin team, but I want to talk with you straight."* In fact, Herlihy has knowingly represented Stepanian and HSP since 2005, if not earlier.

H. Herlihy failed to adhere to the applicable standards of professionalism and ethics when dealing with Artists, failed to communicate properly, draft appropriate agreements, act in good faith and deal fairly with Artists, and also misrepresented his experience, skill, success and/or ability to obtain certain results in various areas such as song licensing, recording contracts, and the like. Herlihy and the other defendants' failure to prepare and disclose accountings for expenses and for each specific recording, or to prepare and file copyrights on behalf of the Artists were engaged in with the express intention of usurping the Artists' control and depriving them of income from their creative endeavors.

I. At the same time he was advising Stepanian and HSP about its rights under the Agreement, and while HSP was preparing to institute litigation against the Artists, Herlihy was also claiming to be acting in Stoltz' best interest in November and December 2009, when Herlihy negotiated and presented Stoltz with a *song placement/licensing deal* ("CBS Deal") with *Measurement Arts/CBS*.

J.  At the same time he was advising Stepanian and HSP about its rights under the Agreement, and while HSP was preparing to institute litigation against the Artists, in early December, 2009, Herlihy took advantage of Mr. Stoltz by adamantly insisting that Stoltz immediately execute the CBS Deal at a time when Herlihy was fully aware that Stoltz was sedated the evening before major neck surgery, and thus unable to adequately review the document and give proper consent.

K.  At the same time he was advising Stepanian and HSP about its rights under the Agreement, and while HSP was preparing to institute litigation against the Artists, in early December, 2009, Herlihy insisted, over Stoltz' objection, to the point of coercion that Stoltz re-title songs for the CBS Deal – a controversial practice, frowned on by the industry due to the oft-repeated dilution of rights and confusion in the market place by introducing and attaching new titles to prior Works.

L.  At the same time he was advising Stepanian and HSP about its rights under the Agreement, and while HSP was preparing to institute litigation against the Artists, and thereafter, Herlihy failed to provide Stoltz with a signed, executed copy of the CBS Deal.

M.  At the same time he was advising Stepanian and HSP about its rights under the Agreement, and while HSP was preparing to institute litigation against the Artists, and thereafter, Herlihy failed to inform Stoltz which songs, if any, were actually placed in the CBS Deal. Herlihy has never provided Stoltz, despite written request, with a signed executed copy of the CBS- Deal

agreement, nor a list of the re-titled songs, registration of materials to protect Stoltz, nor any file information to Stoltz.

N. At the same time he was advising Stepanian and HSP about its rights under the Agreement, and while HSP was preparing to institute litigation against the Artists, and thereafter, Herlihy failed to pay Stoltz *royalties* and *synchronization license fees* for songs used in the CBS Deal, in clear and ongoing violations of trustworthy ethical behavior required by an Officer of the Court, choosing instead to unjustly enrich himself and HSP at his "clients'" expense.

O. At the same time he was advising Stepanian and HSP about its rights under the Agreement, and while HSP was preparing to institute litigation against the Artists, Herlihy purportedly attempted to negotiate a *Song Download/Ringtone License* deal for Stoltz with David Eidler/Fleurdelismusic.com ("Ringtone Deal").

P. At the same time he was advising Stepanian and HSP about HSP's rights under the Agreement, and while HSP was preparing to institute litigation against the Artists, Herlihy interfered with Stoltz' own attempt to secure a CD distribution deal for his upcoming CD ("Sony/Red Deal"), with the full knowledge that HSP had recently turned down a music distribution deal from *Sony/Red Distribution* that would have been more advantageous to the Artists than any deal Herlihy and/or HSP ever generated, negotiated or obtained for the Artists. This egregious conduct resulted in *de facto* complete control of the Artists' recordings and revenues without an appropriate Distribution or

Recording agreement. Upon discovering that Stoltz was talking to Sony/Red about the distribution of Stoltz' next CD, Herlihy sought again to finagle and wrest control of the deal from Stoltz, when Herlihy issued a December 10, 2010 email to Sony/Red's representative, without Stoltz' knowledge or permission, stating:, *"I want to ask that you please run whatever you do through the Highsteppin' Office first before you reach out to any outside parties on Brian's behalf"*.

Q. Herlihy, in concert with HSP and Stepanian, conspired and surreptitiously attempted to divert, finagle and wrest control of the Artists' individual and/or collective Publishing rights, Licensing fees, Mechanical royalties, merchandise, all income and gross revenues, and other emollients of their creative endeavors, by ongoing misrepresentation, concealment of costs, sales revenues, interference with artistic and business relationships, breach of trust and fiduciary duties, fraud, deceit and other deceptive and unfair actions and/or inactions, which viewed in totality, is a complete, ongoing and unlawful usurpation of their rights as Artists, clients, performers and individuals.

R. Herlihy, in concert with HSP and Stepanian, failed to properly register at least 24 separate Artists' recording(s), and instead of registering the 24+ recording(s) in the Artists' names, defendants utilized the universally acknowledged Copyright symbol and fraudulently attempted to claim ownership of the Artists' creation(s), without any signed writings or transfers authorizing defendants' unlawful registration of the recording(s) in HSP's

7

own name, such as the release of the *PBS featuring Page McConnell* CD, "*Moodoo"*, in April 2008. Herlihy and the other defendants knowingly, and intentionally failed to act in the Artists' best interests and protect the Artists' legal rights of ownership and income, by failing to prepare and execute clear written agreements prior to releasing the 24+ recordings, failing to investigate existing copyright interests, failing to properly register the live versions as Performer's rights in an SR Copyright in Artist's name, and by unlawfully listing the copyright on all copies of *Moodoo* as "©2008 HighSteppin' Productions, LLC".

S. Herlihy, in concert with HSP and Stepanian, failed to provide the Artists with written recording agreements, including that upon the release of *Moodoo*, Herlihy, in concert with HSP and Stepanian, failed to provide written recording agreement(s) that traditionally addresses copyright ownership, registrations, credits, deal terms, personnel fees, project costs, promotion and marketing budgets, compensation terms, approval rights, monetary advances, Mechanical Royalties, Duration, Renewals and Options for additional Recordings.

T. Herlihy, in concert with HSP and Stepanian, failed to provide any accounting of royalties, including mechanical royalties, and upon the release of *Moodoo,* Herlihy, in concert with HSP and Stepanian, failed to provide an accounting of Mechanical Royalty payments and costs to third parties on a contracted for agreed rate or Compulsory License Rate, thereby exposing the Artists' to

potential liability to third parties in violations of Federal law, while depriving the Artists' of their rightful income.

U. Herlihy, in concert with HSP and Stepanian, failed to advise or even attempt to register lawful copyrights on numerous sound recordings on behalf of the Artists, in addition to the failures attendant to the Moodoo release,, and instead, HSP, Stepanian and Herlihy have now released at least twenty-four (24) unauthorized CDs (hard copy & digital download) (listed below) without ever properly addressing, advising, or assisting Artists in registering the performed Sound Recording Copyrights in Artists' names.

- Porter, Batiste, Stoltz w/ Steve Kimock 02-24-06 Mexicali Blues, Teaneck, NJ
- Porter, Batiste, Stoltz w/ Steve Kimock 02-25-06 Mexicali Blues, Teaneck, NJ
- George Porter Jr + Runnin Pardners, 04/27/06 Southport Hall, New Orleans, LA
- Porter, Batiste, Stoltz w/ Skerik, 4/29/06, The Howlin' Wolf, New Orleans, LA
- Porter, Batiste, Stoltz w/ Steve Kimock 09-21-06 Orange Peel, Asheville, NC
- Porter, Batiste, Stoltz w/ Steve Kimock 09-22-06 Lyric Theatre, Blacksburg, VA
- Porter Batiste Stoltz w/ Steve Kimock – 3/15/07 Cervantes Masterpiece Ballroom, Denver, CO
- Porter Batiste Stoltz 07/13/07 All Good Festival, WV
- Porter Batiste Stoltz 11/10/2007 Double Door Inn, Charlotte, NC HSP-PG906
- Porter Batiste Stoltz 11/24/2007 Cervantes' Masterpiece Ballroom, Denver, CO
- Porter Batiste Stoltz and Bonerama 11/24/2007 Cervantes' Masterpiece Ballroom, Denver, CO (3rd set)
- Porter Batiste Stoltz – 12/30.07 New York, NY

- Porter Batiste Stoltz with Page McConnell 9/24/2008 Revolution Hall, Troy, NY – HSP 501

- Porter Batiste Stoltz with Page McConnell 9/25/2008 Lupo's, Providence, RI – HSP 502

- Porter Batiste Stoltz with Page McConnell 9/26/2008 B.B. King's, New York, NY – HSP 503

- Porter Batiste Stoltz with Page McConnell 9/27/2008 Higher Ground, Burlington, VT – HSP 504

- Porter Batiste Stoltz 10/29/2008 Live Wire Music Hall, Savannah, GA – HSP-PG904

- Porter Batiste Stoltz 10/30/2008 Smith's Olde Bar, Atlanta, GA - HSP 505

- Porter Batiste Stoltz featuring Kyle Hollingsworth 3/18/2009 Boulder Theater, Boulder, CO – HSP-PG907

V. Herlihy, in concert with HSP and Stepanian, released inferior-quality recordings, despite objection by the Artists, including all of the above-listed releases, which are devoid of the standard artistic involvement and approval regarding the final product. The hastily-released, sub-standard, inferior, un-registered and crudely-edited versions of the Artists' Sound Recordings of over 380 songs lack proper and accurate copyright registration documents, and the ongoing lack of proper approvals, clearances, quality control, artistic editing, professional engineering, mastering and sheer massive volume of goods coupled with the inferior sonic quality, have been and continued to be

damaging to the image, livelihood, catalogue, careers and reputations of the Artists.

W. Herlihy, in concert with HSP and Stepanian, have intentionally and consistently failed to provide any agreements, concerning Recording, Publishing and Merchandise functions, that address essential industry standard terms and/or clarify the allocation of Costs, Artistic Royalties, Fees, Advances, Profit-sharing, Tour Support, income, Revenues, Publishing, risk allocation, Controlled Compositions, Compulsory Mechanical Royalties, and any other essential terms and issues prior, during or after the release of the 24+ above-listed CDs. Also, Herlihy, in concert with HSP and Stepanian, further failed to provide an accounting of Costs, Gross Revenues, Sales Records, Tour Financials, and Copyright registration, opting instead to keep 100% of Revenues while refusing to discuss and disclose any specific project or business financials, and then when challenged, continuously misrepresenting and falsely assuring the Artists that any monies spent by HSP were an "investment in all things HighSteppin'". The ongoing, intentional failure to provide the Artists with timely agreements and accountings, and the unauthorized release a numerous poorly accounted Artistic Works and titles, has harmed the Artists' careers and exposed them to potential liability for inaccurate Mechanical Royalty payments and possible violations of Copyright law to third party Authors and Performers, in violations of Federal law, while depriving the Artists' of their rightful income.

X. By completely failing to timely and fully disclose relevant terms and accountings, Stepanian, Herlihy and HSP have damaged and may possibly further jeopardize the Artists' reputations, images and future earning potential, as the Artists' livelihoods and careers have been and will continue to be, damaged by defendants' conduct.

Y. Herlihy, in concert with HSP and Stepanian, also failed to provide an accounting, and any Recording Agreement, Distribution deal or other required written agreement that covers the broad range of possible terms that address payments, fees, costs, and basic Copyright registration and Compulsory Mechanical Royalties, Fees, Controlled Composition clauses, time frames, Artist digital sales volume, per unit rates and other essential terms for the following unauthorized solo Artist-owned releases by HSP:

- Brian Stoltz – "Up All Night~Live (Long Overdue Recordings) LOR0003 - 2007

- Brian Stoltz - "God, Guns & Money"(Long Overdue Recordings) LOR0002 – 2005

- Brian Stoltz - "East of Rampart Street" (Long Overdue Recordings) LOR0001 – 2003

- George Porter Jr. – It's Life (Indy) 2007

- George Porter Jr. and Runnin Pardners - Funk N' Go Nuts (Transvideo) 2000

- George Porter Jr. and Runnin Pardners – Funk This (Transvideo) CTV2112 – 1997

- George Porter Jr. and Runnin Pardners – Things Aint What They Used To Be – (Indy) 1994

- Russell Batiste Jr., Orkestra from da Hood – The Clinic (Indy) RBJ71944

- Porter-Batiste-Stoltz - Expanding The Funkin' Universe (OUW Records) OUW0001 2005

Z. Herlihy, in concert with HSP and Stepanian, conspired and surreptitiously attempted to usurp Artists' business opportunities by failing to adequately advise Artists and/or pursue their best interests regarding potential licensing and recording contracts.

AA. Prior to meeting Stepanian, Stoltz, Batiste and Porter sold recordings directly at concerts, Internet and retail outlets for significant profits per unit due to retaining virtually all sales gross receipts. Every year for decades, each member's recording and live performances were conducted on a profitable daily, weekly and annual basis.

BB. HSP, Stepanian's and Herlihy's actions, which resulted in complete and total control of the Artists' careers and creations, with a corresponding lack of legal agreements, management expertise and basic industry-accepted accounting practices, has unlawfully rendered what was once a profitable enterprise for the Artists, and instead, has driven them into bankruptcy, and resulted in potential third party liability, while flooding the market with poor quality recordings, in complete contravention of basic business, marketing and promotion practices that match results to market conditions, and clearly allocate risk and reward in writing.

CC. Instead, Herlihy, Stepanian and HSP acted in a clear conflict of interest by pressuring the Artists not to use outside lawyers, and by attempting to persuade the Artists to allow HSP to administer PBS's music through "in-house deals" – and kept all Revenues from Internet sales, Publishing monies

and refused to pay even minimal mandatory Mechanical Royalties under clear formulas under federal Copyright in the absence of any agreement. Herlihy went so far as to state: *"We don' expect that you guys will have to spend a lot of money on lawyers to heavily negotiate this . . . ."*

DD. Herlihy, in concert with HSP and Stepanian, conspired and surreptitiously attempted to mislead the Artists with repeated and coercive requests for any and all original music by PBS, individually and collectively, and by guaranteeing that he would create numerous licensing opportunities for the Artists, when in fact Herlihy was to try and lure the Artists into providing more song titles upon which HSP would reap 100% of the revenues.

EE. Herlihy, in concert with HSP and Stepanian, conspired and surreptitiously attempted to obtain more involvement and exert more influence over each Artist's solo projects and individual song catalogs, in an effort to extend HSP's financial and business control over each Artist's entire career.

FF. Herlihy, in concert with HSP and Stepanian, conspired and surreptitiously attempted to jeopardize relationship between Stoltz and other musicians, for example, Zachary Richard. Despite eight (8) months involvement, Herlihy failed to execute a simple, standard, 50/50 co-publishing agreement between Stoltz and recording artist/songwriter Zachary Richard for the co-written song, *Last Kiss*, ("Last Kiss Deal") which jeopardized a 25-year professional and personal relationship between Stoltz and Richard.

GG. Herlihy, in concert with HSP and Stepanian, sought to finagle and wrest control of the Last Kiss Deal from Stoltz by substituting HSP's office address for Stoltz mailing address, without permission.

HH. Herlihy, in concert with HSP and Stepanian, despite an eight (8) month opportunity, failed to issue, on behalf of Stoltz, a simple, standard mechanical license to *Musicor*, a Canadian record label, for the Stoltz/Richard song, *Last Kiss*.

II. Herlihy repeatedly ignored the Artists' requests for a specific list of his Licensing Placements, opting instead to write in an email of 11/19/08, "I've been licensing music for use in movies, tv shows, commercials, videos, web-based programming, DVDs etc. I've negotiated music placements in Farrelly Brothers movies like "There's Something About Mary", as well as for The WB Television Network, ESPN, HBO, Turner Broadcasting... ." No specifics were ever forth coming and no disclosures have been made documenting the efforts of Herlihy to license the goods..

JJ. Herlihy, in concert with HSP and Stepanian, failed to act in good faith and/or acted fraudulently when negotiating and confecting the Professional Management Agreement ("Agreement") at issue herein.

4. Count I of the Counterclaim is amended and supplemented to allege that Herlihy, as HSP's agent and attorney, was active and complicit in the breach(es) of said Agreement against the Artists.

5. Count II of the Counterclaim is amended and supplemented to allege that Herlihy, as HSP's agent and attorney, failed to act in good faith, and failed to deal fairly with Artists before, during, and after the term of the Agreement.

6. Count III of the Counterclaim is amended and supplemented to allege that Herlihy, as HSP's agent and attorney, was active and complicit in the actions and/or inactions that have resulted, and/or may result in, HSP's unjust enrichment.

7. Count IV of the Counterclaim is amended and supplemented to allege that Herlihy, as HSP's agent and attorney, was active and complicit in actions and/or inactions that resulted in damage to the Artists' reputations, career opportunities and financial positions, and the Artists seek a full accounting, including the return of any and all documents, files, records and agreements. The Artists further seek an Order requiring Herlihy and/or the other defendants, to provide a complete list of all persons contacted by defendants (or any one acting on their behalf) concerning the Artists, and that defendants refrain from any and all future disclosures and/or communications regarding the Artists, due to the overwhelming conflicts of interest and interference with the Artists' future business opportunities and advantages.

8. Count V of the Counterclaim is amended and supplemented to allege that Herlihy, as HSP's agent and attorney, as well as Stepanian, HSP and possibly others yet to be identified, were all active and complicit in: 1) actions and/or inactions that constitute intentional copyright infringement of the Artists' prior registered works; 2) the failure to properly register live Sound Recordings in the name of the Artists. At this date HSP has released approximately 380 songs that were performed live by Artists, with additional titles and compilations being discovered regularly, without complying with Title 17 of the U.S. Code, thus entitling the Artists to an award of attorney's fees, costs, exemplary damages, injunctive relief, cessation of all sales of

Artist goods, payment of all License Fees, and return of all goods to the Artists, as owners, with a full accounting, replete with sufficient documentation.

9. Count VI of the Counterclaim is amended and supplemented to allege that Herlihy, as HSP's agent and attorney, was active and complicit in actions and/or inactions that were required under the Agreement regarding expenditure transactional limits per item, monthly ceilings and ongoing Accountings owed to Artists. The failure to properly address, track and disclose project-specific Costs, Recording Revenues, Sales Statements, Publishing, Licenses, Artist Fees, and written Copyright materials violates standards of conduct in entertainment and business activities.

10. Count VII of the Counterclaim is amended and supplemented to allege that Herlihy, as HSP's agent and attorney, was active and complicit in the fraudulent actions and/or inactions that resulted in damage to the Artists, including Herlihy's failure to disclose potential and actual conflicts of interest, failure to obtain waivers of said potential and actual conflicts, and failure to discharge his fiduciary duties and duties of loyalty and honesty to the Artists, and further constitute predicate acts under the federal civil RICO statute.

11. Count VIII of the Counterclaim is amended and supplemented to allege that Herlihy, as HSP's agent and attorney, negligently misrepresented his and HSP's track record, their ability to adequately perform their obligations under the Agreement, their ability to obtain, negotiate and draft, requisite Licensing, Recording and/or Publishing contracts for Artists in a clear and accountable manner.

12. Count XI of the Counterclaim is amended and supplemented to allege that Herlihy, as HSP's agent and attorney, was active and complicit in actions and/or inactions that constitute a civil conspiracy against the Artists, including a pattern of unlawful activity that is tantamount to

Deceptive and Unfair Trade Practices, Restraint of Trade, Unfair Competition, Deceptive Advertising, False Advertising, Trade Slander, civil RICO and other violations of law and equity which have caused severe and lasting harm to the careers, reputations, relationships and futures of the Artists.

13. Count X of the Counterclaim is amended and supplemented to allege that Herlihy, as HSP's agent and attorney, was active and complicit in the alleged violations of M.G.L. c. 93A, §§ 2 and 11.

14. Count XI of the Counterclaim is amended and supplemented to include a declaratory judgment against Herlihy, as HSP's agent and attorney, to determine the rights, duties, status and other legal relations of the parties.

15. The Counterclaim is amended to specifically add and plead Count XII, which includes causes of action against HSP, Stepanian, Herlihy, and possibly others not yet identified, (collectively and/or individually "RICO defendants"), for civil RICO violations of 18 U.S.C. §§ 1961-1968, including conspiracy to commit RICO violations pursuant to § 1962(d), as well as violations of § 1962 (a), (b), and (c), and the knowing attempt to create, and/or actual creation, of an Enterprise whose purpose was to unlawfully deprive the Artists of their ownership of, and profits from, creative endeavors, including copyrights, performance income, publishing income, songwriting income, and ownership of music catalogues, including but not limited to Porter's ownership in the Meters' catalogue. It is specifically plead that the RICO defendants agreed to commit, and did commit, at least two predicate acts of racketeering, including but not limited to acts of deliberate copyright infringement, fraudulent representation regarding accountings, and other actions set forth hereinabove and as will be more fully unveiled in discovery.

16. The Prayer For Relief of the Counterclaim is amended and supplemented to include and

seek the relief prayed for therein from Herlihy, as well as HSP and Stepanian.

Respectfully Submitted,

　　/s/ John O. Pieksen, Jr.　　
John O. Pieksen, Jr. (LA Bar #21023)
**JOHN PIEKSEN & ASSOCIATES, LLC**
829 Baronne Street
New Orleans, LA 70113
Telephone:　504.581.9322
Facsimile:　504.324.4844
jpieksen@cox.net
**Special Counsel for the Bankruptcy Estate and the U.S. Bankruptcy Trustee, Wilbur "Bill" Babin**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon all counsel of record by ECF filing, facsimile, electronic transmission, and/or by depositing same in the United States mail, properly addressed and postage prepaid, this 14th day of February, 2011.

　　/s/ John O. Pieksen, Jr.